## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

KIMBERLY DIPIPPO, on behalf of herself
and on behalf of all others similarly situated,

TERRENCE RYAN, Administrator for the
Estate of John F. Ryan, on behalf of the Estate
itself and on behalf of all others similarly
situated,

       Plaintiffs,

       v.

ONEIDA COUNTY, NEW YORK,
c/o Anthony J. Picente Jr.
County Executive
Oneida County Office Building
800 Park Avenue
Utica, NY 13501

ANTHONY R. CARVELLI
Commissioner of Finance
Oneida County Office Building
800 Park Avenue, 5th Floor
Utica, NY 13501

ONONDAGA COUNTY, NEW YORK,
c/o J. Ryan McMahon, II
County Executive
John H. Mulroy Civic Center
421 Montgomery Street, 14th floor.
Syracuse, NY 13202

STEVEN P. MORGAN
Onondaga County Chief Fiscal Officer
John H. Mulroy Civic Center
421 Montgomery Street, 15th floor.
Syracuse, NY 13202

       Defendants.

Case No.:   6:24-CV-0902 (LEK/CFH)

**CLASS ACTION**
**COMPLAINT WITH JURY DEMAND**

## INTRODUCTION

The State of New York came up with an idea to make money for its political subdivisions and tax entities. For nothing. Foreclosing on delinquent taxes and other legitimate obligations is something the law allows. But then New York used this very frequent situation of foreclosures to enact a statute that 'allowed' the keeping of ALL the money from the foreclosure. Not just the amount owed, but everything. Even the homeowner's excess equity. Admittedly, New York was not the only state that enacted this scheme. However, the U.S. Constitution prohibits the government from taking property from a citizen in excess of what is owed without just compensation.

This protection *long* pre-dates the federal constitution. "The principle that a government may not take more from a taxpayer than she owes can trace its origins at least as far back as Runnymede in 1215, where King John swore in the Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.' W. McKechnie, Magna Carta, A Commentary on the Great of King John, ch. 26, p.322 (rev. 2d ed. 1914) (footnote omitted)." *Tyler v. Hennepin County,* 598 U.S. 631, 639 (May 25, 2023).

This action is brought by the named Plaintiffs, for themselves and others similarly situated, to redress the constitutional violations practiced by Defendants in collecting from Plaintiffs and the putative class more than they owed the government, in violation of the Takings Clause of the U.S. Constitution, and in violation of other state and federal rights, as set forth below.

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction over this action lies pursuant to 28 U.SC. §1331 based on the federal claims in this Complaint that arise under the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. Further, this action seeks relief under 42 U.S.C. §1983, for deprivation of rights guaranteed by the federal constitution accomplished under color of state law, over which original jurisdiction lies in this court pursuant to 42 U.S.C. §1343.

2.      This Court has supplemental jurisdiction over both legal and equitable claims in this Complaint arising under the laws of the state of New York law ("state law claims") pursuant to 28 U.S.C § 1367 because the state law claims "arise out of a common nucleus of operative facts" with the federal claims over which this Court has original jurisdiction.

3.      This action is properly venued in this federal District pursuant to 28 U.S.C. §§1391(b)(1) and (2) because the Defendants are located here; a substantial portion of the conduct giving rise to this action occurred here; and the property that is the subject of this suit is located here.

## PARTIES

4.      Plaintiff Kimberly DiPippo at all times relevant to this matter, was an owner of property located in Oneida County, New York and was the owner of certain real property that is the subject of this action.

5.      Plaintiff Terrance Ryan at all times relevant to this matter, is the Administrator for the Estate of John F. Ryan, who died in December 2018 and who, at all times relevant, was an owner, at all times relevant to this matter, was an owner of property located in Onondaga County, New York and was the owner of certain real property that is the subject of this action (hereinafter,

Terrence Ryan, as Administrator of the Estate of John F. Ryan, is referred to as "Plaintiff Ryan" or similar).

6.      Defendant Oneida County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Oneida County is one of the Tax Districts described and discussed in this Complaint.

7.      Defendant Anthony R. Carvelli is the current Commissioner of Finance for the County of Oneida and is sued in his official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq. and/or local law (as authorized by New York state law), including the Oneida County Tax Collection and Enforcement Act (Chapter 559 of the Laws of 1902).

8.      Defendant Onondaga County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Onondaga County is one of the Tax Districts described and discussed in this Complaint.

9.      Defendant Steven P. Morgan (or successor), was and/or is the Chief Fiscal Officer of the County of Onondaga, and is sued in his official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq. and/or local law (as authorized by New York state law), including the Onondaga County Tax Act (Chapter 690 of the Laws of 1937 et seq).

## METHOD FOR TAKING PROPERTY WITHOUT JUST COMPENSATION PURSUANT TO NEW YORK LAW

10.     Plaintiff DiPippo was the owner of certain real property located in Oneida County, in the Town of Whitestown, New York, and known as LOC NO/APN/Parcel No. 307007 317.011-1-28 (the "DiPippo Property").

11.     Taxes were owed to the Defendant Tax District, Oneida County, on the DiPippo Property in the amount of approximately $16,946.12, including fees, interest and penalties. See, Exhibit A, attached and incorporated herein.

12.     Decedent John F. Ryan (the estate for whom Plaintiff Ryan is the Administrator) was the owner of certain real property located in Onondaga County, in the Town of Camillus, New York and known as LOC NO/APN/Parcel: 312089 040.-01-23.0 (the "Ryan Property").

13.     Taxes were owed to the Defendant Tax District, Onondaga County, on Ryan Property in the amount of approximately $20,075.45 including fees, interest and penalties. See, Exhibit B, attached and incorporated herein.

14.     The power of taxation of real property in New York only lies with the State of New York. As the highest court in New York confirmed: there is an "overarching constitutional principle that the power of taxation lies with the State…" *In Matter of Baldwin Union Free Sch. Dist. v County of Nassau*, 22 N.Y.3d 606 (2014).

15.     Put another way, local governments (counties, cities, townships, villages, etc.) have no independent power to lay or collect property taxes. That power comes exclusively by delegation of the State's power to do so. *Expedia, Inc. v. City of N.Y. Dept. of Fin.*, 22 N.Y.3d 121, 126–127 (2013):

> In New York, local governments lack an independent power to tax. The State Constitution vests the taxing power in the state legislature and authorizes the legislature to delegate that power to local governments. The State Constitution places fundamental limitations on such delegations. The legislature must describe with specificity the taxes authorized by any enabling statute. As a general rule, tax statutes should be strictly construed and limited to their terms, which should not be extended by implication. Any ambiguity in a tax law should be resolved in favor of the taxpayer and against the taxing authority. (Internal citations omitted).

16.     The process established by New York state law provides not just for the levying and collection of property taxes, but also for placing of liens and taking of property for unpaid or delinquent taxes.

17.     New York law, RPTL 902, places an automatic lien on property when each property tax bill is issued. This lien attaches regardless of delinquency, automatically.

18.     Specifically, RPTL 902 provides:

The amount of all taxes, special ad valorem levies and special assessments levied upon any parcel of real property by the board of supervisors shall, except as otherwise expressly provided by law, be and become a lien thereon as of the first day of January of the fiscal year for which levied and shall remain a lien until paid.

19.     Failure to pay the amounts owed results in a delinquent tax under RPTL 1102[2].

20.     "Delinquent tax" is defined by RPTL 1102[2] as "an unpaid tax, special ad valorem levy, special assessment or other charge imposed upon real property by or on behalf of a municipal corporation or special district, plus all applicable charges, relating to any parcel which is included in the return of unpaid delinquent taxes prepared pursuant to section nine hundred thirty-six [936] of this chapter or such other general, special, or local law as may be applicable."

21.     The aforementioned RPTL 936[2], as referenced in RPTL 1102[2], allows an additional percentage to the delinquency amount:

In making the return of unpaid taxes, the collecting officer shall add five per centum [5%] to the amount of each tax as levied. In the event that the collecting officer fails to do so, the county treasurer shall make such addition. In a county in which there is a local law in effect pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred seventy-two [972] of this chapter providing for the collection of taxes in installments, the five per centum [5%] provided by this subdivision shall not be added to the taxes which a real property owner has elected to pay in installments pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred seventy-five [975] of this chapter. Such five per centum [5%] shall be added by the county treasurer to the amount of such taxes as shall have remained unpaid after the date upon which the last installment was due as provided in such local law. The amount of such added per centum shall thereafter be deemed part of the amount of the unpaid tax.

22.     Further, the applicable additional "charges" as referenced in the definition of

"delinquent tax" are, pursuant to RPTL 1102:

(a) the cost of the mailing or service of notices required or authorized by this article; (b) the cost of publication of notices required or authorized by this title; (c) the amount of any interest and penalties imposed by law; (d) the cost of recording or filing legal documents required or authorized by this article; and (e) the reasonable and necessary cost of any search of the public record required or authorized to satisfy the notice requirements of this article, and the reasonable and necessary expenses for legal services of a tax district in connection with a proceeding to foreclose a tax lien; provided, that: (i) a charge of up to one hundred fifty dollars per parcel shall be deemed reasonable and necessary to cover the combined costs of such searches and legal expenses, and such an amount may be charged without substantiation, even if salaried employees of the tax district performed the search or legal services; and (ii) a tax district may charge a greater amount with respect to one or more parcels upon demonstration to the satisfaction of the court having jurisdiction that such greater amount was reasonable and necessary.

23.     If delinquent taxes (as described above, being the principal and allowed additional

charges and percentages) remain unpaid for ten (10) months from the lien date, the enforcing

officer is authorized to file a list of delinquent properties with the County Clerk, per RPTL 1122.

24.     Specifically, RPTL 1122 provides:

Ten months after lien date, or as soon thereafter as is practicable, but no sooner than one month after the receipt of the return of unpaid taxes, the enforcing officer of each tax district shall execute a list of all parcels of real property, except those excluded from such list in the manner provided by section eleven hundred thirty-eight [1138] of this article, affected by delinquent tax liens held and owned by such tax district.

25.     Thereafter, when 11 additional months elapse without proper payment (that is, a

total of 21 months after the lien date), the enforcing officer is authorized to bring a foreclosure

action on the property pursuant to RPTL 1123.

26.     Specifically, RPTL 1123 provides:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing officer shall execute a petition of foreclosure pertaining to those properties which remain subject to delinquent tax liens; provided, however, that in the case of property which is subject to a three or four year redemption period, such petition shall be executed thirty-

three or forty-five months after lien date, respectively, or as soon thereafter as is practicable.

27.     If the owner of the property does not pay all the delinquent taxes and charges and percentage, a judgment is entered pursuant to RPTL 1123 and 1136, authorizing the divestiture of title of the property from the owner, and authorizing the enforcing officer, acting under color of state law, to file a deed taking full and complete title to the property from the owner and transferring it to the Tax District, here Defendants Oneida and Onondaga Counties, as pertinent.

28.     Specifically, RPTL 1123 and 1136 provide:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing officer shall execute a petition of foreclosure pertaining to those properties which remain subject to delinquent tax liens; provided, however, that in the case of property which is subject to a three or four year redemption period, such petition shall be executed thirty-three or forty-five months after lien date, respectively, or as soon thereafter as is practicable. §1123.

All persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption. §1136[3].

29.     Upon taking of title of the property from the owner, the Tax District may keep the property for government use, or is authorized by RPTL 1166 to sell the property.

30.     Specifically, RPTL 1166 provides:

Whenever any tax district shall become vested with the title to real property by virtue of a foreclosure proceeding brought pursuant to the provisions of this article, such tax district is hereby authorized to sell and convey the real property so acquired, which shall include any and all gas, oil or mineral rights associated with such real property, either with or without advertising for bids, notwithstanding the provisions of any general, special or local law.

31.     In similar fashion, New York state law permits local governments to exercise the foregoing powers by grant of authority, by the State, to the local government to enact local laws (not in conflict with state law) to accomplish the same objective. See, RPTL, Chap. 50-A, Article

11, Title 1, Section 1104; See also the Oneida County Tax Collection and Enforcement Act and the Onondaga County Tax Act.

32.     That grant of authority places no restriction on the local government against taking property **beyond** what is lawfully owed to the government.

## BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE DIPIPPO PROPERTY WITHOUT JUST COMPENSATION

33.     Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq. and the Oneida County Tax Collection and Enforcement Act (Chapter 559 of the Laws of 1902), Defendant Oneida County, New York purchased an interest in Plaintiff DiPippo's Property on or about December 31, 2018, subject to Plaintiff DiPippo's right of redemption. See Exhibit A, attached hereto and incorporated herein.

34.     The Deed reflecting this foreclosure and purchase which finally extinguished all of Plaintiff's right, title, and interest in the Property; and which transferred of all right, title, and interest in the Plaintiff DiPippo Property from Anthony Carvelli, Commission of Finance of The County of Oneida to the Board of Legislators of the County of Oneida was recorded on September 6, 2022 as Instrument 2022-014161 in the Oneida County Clerk's Office. See Exhibit A, attached hereto and incorporated herein.

35.     These acts constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

36.     Subsequently, on or about December 21, 2022, the County of Oneida conveyed and transferred title to the DiPippo Property to a third-party for approximately $250,100. The Deed reflecting this sale and transfer was recorded December 22, 2022 and is attached hereto as Exhibit C and is attached hereto and incorporated herein.

37.     The sale and/or conveyance produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff DiPippo for delinquent taxes and charges.

38.     Defendant Oneida County retained all the proceeds of this sale despite Plaintiff DiPippo only owing approximately $16,946.12 in past due taxes and charges.

39.     Pursuant to and under color of New York state law and Oneida County law (as authorized by New York state law), this excess was not returned to Plaintiff DiPippo, and Plaintiff DiPippo was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

40.     Plaintiff DiPippo suffered a taking without just compensation.

41.     The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York and the Oneida County Tax Collection and Enforcement Act, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE RYAN PROPERTY WITHOUT JUST COMPENSATION**

42.     Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq. and Onondaga County Tax Act (Chapter 690 of the Laws of 1937 et seq), Defendant Onondaga County, New York on or about December 1, 2022, Defendant Onondaga County, New York took all right, title, and interest to several parcels of real property, including the Ryan Property. See, Exhibit B, attached hereto and incorporated herein.

43.     The Tax Deed reflecting the above taking was executed on or about November 21, 2022 and recorded on or about December 1, 2022 in the Onondaga County Clerk's Office. See Exhibit B, attached hereto and incorporated herein.

44.     Subsequently, on or about December 14, 2022, the County of Onondaga conveyed and transferred title to the Ryan Property to a third-party for approximately $94,000. See, Exhibit D, attached hereto and incorporated herein.

45.     The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff Ryan for delinquent taxes and charges.

46.     Defendant Onondaga County retained all the proceeds of this sale despite Plaintiff Ryan only owing, upon information and belief, approximately $20,075.45 in past due taxes and charges.

47.     These acts constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

48.     Pursuant to and under color of New York state law and Onondaga County law (as authorized by New York state law), this excess was not returned to Plaintiff Ryan, and Plaintiff Ryan was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

49.     Plaintiff Ryan suffered a taking without just compensation.

50.     The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York and the Onondaga County Tax Act, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation

**GOVERNMENTAL ACTIONS AND COLOR OF LAW**

51.     The collection in New York of property taxes and certain other obligations is governed by New York state law.

52.     Bodies politic, political subdivisions, and/or tax districts in New York receive their authority to make and levy taxes and other obligations, and to engage in collections of same and the disposition of the property taken in those collections and the proceeds derived therefrom, pursuant to the laws of the State of New York and do so under color of those laws.

53.     New York law allows tax districts to foreclose on and take title to real property based on unpaid taxes or other obligations. N.Y. Real Prop. Tax § 1102 et seq.

54.     New York state law also authorizes tax districts to use liens and also proceedings of foreclosure (or in the nature of same) to take title to real property based on unpaid taxes or other obligations. See Oneida County Tax Collection and Enforcement Act (Chapter 559 of the Laws of 1902 et seq.), Onondaga County Tax Act (Chapter 690 of the Laws of 1937 et seq).

55.     This process provides that when real property taxes for an identified property have not been paid, the tax district can foreclose the owner's right and title to the property, take title to the subject property, and then sell the property or keep it. These actions are recorded as public records and can be verified by those records.

56.     As stated above, this constitutes a taking of the subject property from the owner by the tax district.

57.     That taking is a violation of the Fifth Amendment to the United States Constitution, and Article I, Section 7 of the New York Constitution, if just compensation is not paid.

58.     However, subsequent to these takings conducted by Defendants, through their Enforcement Officers, and taken under the authority of the laws of the Defendant, State of New York and/or local laws (as authorized by New York state law) and under color of those laws, Plaintiffs and the putative class members were not paid just compensation as required by the Fifth Amendment to the U.S. Constitution and the New York Constitution, Article I, Section 7.

59.     Specifically, through the statutory scheme described above, the State of New York authorized not only the collection of taxes and other fees through the taking of the property, it authorized and perpetrated the taking of the equity in the property in excess of the amount owed by the property owner.

60.     This New York State statutory authorization was exercised by the State of New York's bodies politic, political subdivisions, and tax districts, including the Defendants in this action.

61.     Those powers were exercised in this case against the named Plaintiffs and against the members of the putative class, all under color of those laws.

62.     The persons who undertake the ministerial steps to take and retain property, including the property of the named Plaintiffs, and the property of the putative class members, did so (and continue to do so today) solely and entirely through the 'authority' and under the color of the laws of the State of New York.

63.     As it relates to the named Plaintiffs and members of the putative class, their property taken during the class period had a value in excess of the amount owed to the government for the taxes and/or other obligations for which the property was taken.

64.     New York law, local law (as authorized by New York state law), and the actions alleged herein taken under color of that law, afforded the named Plaintiffs and the putative class members no opportunity to obtain that excess, and following sale (or retention of their property for government use) they did not receive that excess.

65.     The takings that are challenged by this action occurred in two distinct ways. First, the citizen's property was taken under color of law for nonpayment of taxes or other obligations

and sold, with proceeds in excess of the amount owed by the citizen, but, acting again under color of law, that excess was not returned to the citizen.

66.     Second, and alternatively, the property was taken under color of law for nonpayment of taxes or other obligations and was not sold but was kept by the government; the property value was in excess of the amount owed by the citizen; and, acting again under color of law, Defendants failed to return this excess to these citizens.

67.     The New York State Legislature attempted to remedy the foregoing conduct and practice, accomplished under color of New York state law, of taking and keeping property or its proceeds in excess of monies owed when it passed Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill S8305C, signed by the governor on or about April 20, 2024).

68.     However, certain sections of Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill S8305C, signed by the governor on or about April 20, 2024) are unconstitutional, specifically, the following:

> This act shall take effect immediately and shall be deemed to have been in full force and effect on and after May 25, 2023, provided that:… (c) **In any taxing jurisdiction, where a tax-foreclosed property was sold prior to May 25, 2023, a claim for surplus attributable to such sale may be maintained if and only if a proceeding to compel such tax district to distribute such surplus to the petitioner or petitioners had been initiated pursuant to subdivision 1 of section 7803 of the civil practice law and rules, such proceeding was commenced in a timely manner as provided by section 217 of such chapter, and such proceeding was still active on the effective date of this act.** (Emphasis added).

69.     This provision vitiates Plaintiff's and the putative class members' vested federal constitutional claims for just compensation to remedy, inter alia, Defendants' violations of the Takings Clause.

70.     Therefore, unconstitutional conduct is ongoing, and continues as current practice and is current 'law' in New York. This causes a persistent and continuing violation of both the United States and the New York constitutions, providing basis for declaratory and injunctive relief.

**VIOLATIONS OF THE UNITED STATES CONSTITUTION**

71.     In *Tyler v. Hennepin County,* the United States Supreme Court, in a 9-0 decision, 1) declared unconstitutional state laws like New York's that authorize and result in the practice of taking and retaining excess proceeds of tax foreclosures and tax sales; and 2) declared a violation of a citizen's constitutional rights where such takings occur. *Tyler v. Hennepin County* (2023), 598 U.S. 631, 143 S.Ct. 1369.

72.     The reasoning of the *Tyler* decision is straightforward. The Constitution's Taking Clause prohibits the 'taking of property without just compensation.' U.S. Const., Amend 5. That prohibition applies to the federal government based on the Fifth Amendment, and state government through the Fourteenth Amendment. *Tyler* at 637-38.

73.     The prohibition is not against states enacting laws to collect taxes and other obligations, which is permitted to satisfy the citizen's tax obligations; it is against taking more than is owed, as is happening in this case. The government has the

> power to sell [plaintiff's] home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a "classic taking in which the government directly appropriates private property for its own use." *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, 535 U. S. 302, 324 (2002) (internal quotation marks and alteration omitted). [Plaintiff] has stated a claim under the Takings Clause and is entitled to just compensation.

*Tyler* at 639.

### NEW YORK STATUTES WHICH CREATED AND RESULTED
### IN THIS TAKING VIOLATION

74.     The laws of the State of New York create the authority, and thereby the color of law, for retaining proceeds from foreclosed or seized property, in excess of the amount owed by the citizen.

75.     Specifically, in violation of both the New York and U.S. Constitution, New York Real Property Tax Law, Chapter 50-a, Article 11 ("Article 11") as well as the Oneida County Tax Collection and Enforcement Act (Chapter 559 of the Laws of 1902 et seq.) and the Onondaga County Tax Act (Chapter 690 of the Laws of 1937 et seq). provides that proceeds from the sale of foreclosed property may be kept, in excess of taxes (and concomitant fees) owed.

76.     This violates the Takings Clause.

77.     Further, New York Real Property Tax Law § 1136[3], as well as the Oneida County Tax Collection and Enforcement Act and the Onondaga County Tax Act, provides for seizure of foreclosed property and thereupon grants title to the government in fee simple, so that "all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption."

78.     This creates the constitutional violation here, because the citizen's property is foreclosed on in a way that the citizen loses all right to the property, including any property value in excess of the taxes owed by the individual to the taxing entity. *See, e.g.*, *Hoge v. Chautauqua Cnty.*, 173 A.D.3d 1731 (4th Dept. 2019).

79.     In addition to violating the Takings Clause of the United States Constitution, the conduct herein violates Article I, Section 7 of the New York Constitution, which identically states that, "[p]rivate property shall not be taken for public use without just compensation."

80.     The subject conduct in this action further violates both the United States and the New York constitutional ban against excessive fines. The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed." Article I, Section 5 of the New York Constitution provides: "Excessive bail shall not be required nor excessive fines imposed…"

## CLASS ACTION ALLEGATIONS

81.     This action is brought on behalf of the Plaintiff and the following class:

All owners of property in Oneida and Onondaga Counties in the State of New York: 1) where such property was seized or otherwise subject to foreclosure for unpaid taxes and associated obligations; 2) the property was either a) sold in foreclosure, or b) retained by any governmental entity; 3) the amount received in the sale, or the value of the property taken, was more than the taxes owed, that is, was in excess of the amount of the owner's debt for which the property was taken; and 4) the owner was not given the excess. The class excludes Plaintiff's counsel and officers of the court handling this matter. The class period is the longest period allowed by law before the filing of this action, and thereafter.

82.     Plaintiffs and the class reserve the right under Rule 23, F.R.C.P. to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

83.     This action has been brought and may be properly maintained as a class action under the provisions of Rule 23 of the Civil Rules because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

### A.  Numerosity

84.     Members of the proposed class are so numerous that joinder of all members is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believes that there are hundreds of individuals in the Class.

B. **Commonality**

85.     Common questions of law and fact exist as to all members of the proposed class. Such questions include, but are not limited to:

a.   Whether New York laws allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

b.   Whether the local laws of Oneida County and/or Onondaga County allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violate the U.S. Constitution;

c.   Whether the practice against the named Plaintiffs and the putative class of retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

d.   Whether the conduct alleged in this suit caused injury in fact to the Plaintiffs and the putative class members;

e.   Whether Defendants, or any of them, should be restrained and thereafter enjoined from continuing to engage in the challenged practice;

f.   Whether New York law allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the New York Constitution;

g.   Whether the local laws of Oneida County and/or Onondaga County allowing retention of excess proceeds, or property value, beyond the amount owed in taxes

or other obligation for which the property was foreclosed, violate the New York Constitution;

h. Whether the practice against the named Plaintiffs and the putative class of retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the New York Constitution;

i. What relief should be granted, if any, to the named Plaintiffs and the putative class;

j. Whether Defendants or any of them were unjustly enriched by retaining an excess as a result of their taking of the properties;

k. Whether the conduct alleged herein constitutes a taking of the property of Plaintiffs and the putative class in violation of the Fifth Amendment of the United States Constitution;

l. Whether the conduct alleged herein constitutes a taking of property of Plaintiffs and the putative class in violation Article I, Section 7 of the New York Constitution;

m. Whether the challenged provisions of New York state law and/or local law enumerated in this Complaint violate the U.S. Constitution, and should be declared as unconstitutional;

n. Whether the challenged provisions of New York state law and/or local law enumerated in this Complaint violate the New York Constitution, and should be declared as unconstitutional;

o. Whether Defendants, or any of them, are liable for inverse condemnation of the property of the named Plaintiffs and the putative class.

**C.  Typicality**

86.     The claims of the Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly harmed by the wrongful conduct alleged here.

**D.  Adequacy of Representation**

87.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiffs are competent and experienced in class action and challenges to government taxes and fees litigation.

**E.  Superiority**

88.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practical, and common questions of law and fact exist to all class members.

89.     Class action treatment will allow all similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**F.  Rule 23 Further Requirements**

90.     Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Defendants.

91.     Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

92.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final relief with respect to the class as a whole.

93.     Questions of law or fact common to the class members predominate over any questions affecting only individual members.

## COUNT I
### Violation of the Takings Clause of the
### Fifth Amendment of the United States Constitution

94.     Plaintiffs reallege all averments as if fully rewritten herein.

95.     The conduct of Defendants and their respective Enforcement Officers as alleged herein, resulted in the taking of the property of Plaintiffs and the putative class, under color of state law and/or local law (as authorized by state law).

96.     By the conduct as alleged herein, Defendants took the property of Plaintiffs and the putative class without just compensation.

97.     The property of Plaintiffs and the putative class was taken both physically, and under color of law, depriving Plaintiffs and the putative class their right, title, and interest to same.

98.     Defendants are now in the possession of the property of the Plaintiffs and the putative class; or sold same and received the proceeds of such sale.

99.     The value of the property, or the proceeds from the sale thereof, exceeded the amount owed for the taxes or other charges for which the property was seized and taken.

100.    Defendants have not given to Plaintiffs or to the putative class those excess monies and/or property, or its value.

101.    As a direct and proximate result of the foregoing, Plaintiffs and the putative class have not received just compensation for the property seized and taken from them.

102.    Defendants have not provided Plaintiffs or the class members adequate procedure to seek just compensation for the taking of their surplus proceeds

103.    Plaintiffs and the putative class members have been harmed and damaged by the foregoing, including but not limited to their loss of their surplus equity, for which they demand and are entitled to just compensation relief under law and equity.

**COUNT II**
**Takings in violation of Article I, § 7, of the New York State Constitution**

104.    Plaintiffs reallege all averments as if fully rewritten herein.

105.    Defendants, acting as political subdivisions, bodies politic, and/or Tax Districts in the State of New York, or acting as an authorized agent and officer thereof, seized and took the property of Plaintiffs and the putative class.

106.    Said seizure and taking was for unpaid taxes and/or other obligations.

107.    The foregoing actions were conducted pursuant to the authority of New York Real Property Law and/or similar local provision(s) authorized by New York law, including the Oneida County Tax Collection and Enforcement Act and the Onondaga County Tax Act.

108.    The seizure and taking of the property of the Plaintiffs and the putative class members was for a specific amount alleged to be owed by the property owner.

109.    Either the value of the property (if not sold at foreclosure after the taking), or the proceeds of the sale of the property (as to property sold following the taking), was in excess of the specified total amount (principal, costs and percentage) alleged to be owed by the property owner.

110.    Defendants did not return to the property owners – neither the Plaintiffs nor the putative class members – that excess, in violation of Article I, Section 7 of the New York Constitution which requires just compensation for the taking of private property.

111.    As a direct and proximate result of the foregoing, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of their surplus equity, for which they demand, and are entitled to, just compensation and/or relief in law and equity.

## COUNT III
### Imposition of excessive fines in violation of the
### Eighth Amendment to the United States constitution

112.    Plaintiffs reallege all averments as if fully rewritten herein.

113.    The seizure and taking of the property of the Plaintiffs and the putative class was in response to the failure of Plaintiffs and the putative class members to pay taxes or other obligation owed to the government.

114.    New York state law, , as well as local laws (as authorized by New York state law), including the provisions cited above, were enacted, at least in part, to deter the non-payment of taxes owed the government.

115.    Defendants took their actions alleged herein in furtherance of that purpose.

116.    The amounts collected from Plaintiffs and the putative class members, through the taking and keeping of the excess, had no correlation to the amount owed to the government.

117.    The seizure and taking alleged herein was conducted under color of state law, as averred above.

118.    The seizure and taking of the excess equity as alleged herein was a violation of the Eight Amendment to the United States Constitution's prohibition against excessive fines.

119.    As a direct and proximate result, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

## COUNT IV
### Imposition of excessive fines in violation of Article I §5 of the New York constitution

120.    Plaintiffs reallege all averments as if fully rewritten herein.

121.    The provisions of Article I, Section 5 of the New York State Constitution prohibit the imposition of excessive fines in the same manner and using the same analysis as the Eighth Amendment to the United States Constitution.

122.    Defendants took these actions, as averred above, for the same reasons and in the same manner as averred.

123.    This imposition and taking of all of the property of the Plaintiffs and the putative class, and not limited to the amount actually owed, was an excessive fine in violation of Article I, Section 5 of the New York Constitution.

124.    As a direct and proximate result, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

**COUNT V**
**Declaratory Judgment that N.Y. Real Property Tax Law as Described Herein, inter alia, Violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution**

125.    Plaintiffs reallege all averments as if fully rewritten herein.

126.    In material part, the Declaratory Judgments Act, 28 U.S.C. § 2201 (a), provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

127.    The parties currently have a disagreement and controversy, *inter alia*, whether: the conduct alleged herein is a taking for purposes of the United State Constitution, Fifth Amendment,

and/or Article I, Section 7 of the New York Constitution; whether that taking was without just compensation; and, if so, whether Plaintiffs and the putative class members have rights to relief.

128.    Plaintiffs therefore requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law, as described herein, inter alia, violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

129.    Further, Plaintiffs requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law, Oneida County Tax Collection and Enforcement Act, and/or the Onondaga County Tax as described herein, inter alia, violates Article I, Section 7 of the New York Constitution and/or Article I, Section 5 of the New York Constitution.

### COUNT VI
**Declaratory Judgment that Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill S8305C, signed by the governor on or about April 20, 2024) violates, inter alia, the Fifth and Fourteenth Amendments to the United States Constitution to the extent it limits, forecloses, and/or vitiates Plaintiffs' and the Class Members' vested claims for just compensation under the Fifth Amendment**

130.    Plaintiffs reallege all averments as if fully rewritten herein.

131.    In material part, the Declaratory Judgments Act, 28 U.S.C. § 2201 (a), provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

132.    The parties currently have a disagreement and controversy, *inter alia*, whether certain language of Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill

S8305C, signed by the governor on or about April 20, 2024) is constitutional, specifically, the following:

> This act shall take effect immediately and shall be deemed to have been in full force and effect on and after May 25, 2023, provided that:… (c) **In any taxing jurisdiction, where a tax-foreclosed property was sold prior to May 25, 2023, a claim for surplus attributable to such sale may be maintained if and only if a proceeding to compel such tax district to distribute such surplus to the petitioner or petitioners had been initiated pursuant to subdivision 1 of section 7803 of the civil practice law and rules, such proceeding was commenced in a timely manner as provided by section 217 of such chapter, and such proceeding was still active on the effective date of this act.** (Emphasis added).

133.    This provision vitiates Plaintiff's and the putative class members' vested federal constitutional claims for just compensation to remedy, inter alia, Defendants' violations of the Takings Clause.

134.    Plaintiffs therefore requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law, as described herein, inter alia, violates the Fifth and Fourteenth Amendments to the United States Constitution.

### COUNT VII
### Unjust Enrichment

135.    Plaintiffs reallege all averments as if fully rewritten herein.

136.    Defendants have been enriched at Plaintiffs' and the putative class members' expense.

137.    Defendants have received money or value to which they are not entitled.

138.    Defendants were enriched when they either retained Plaintiffs' property and the properties of the putative class members, or sold said properties and collected and retained the surplus proceeds of that sale.

139.    Defendants are not entitled to the surplus proceeds or property because Plaintiffs and the putative class members are "entitled to the surplus in excess of the debt owed" to Defendants. *Tyler*, 598 U.S. at 642.

140.    By taking the value of Plaintiffs' and each putative class members' excess, Defendants took more than was required to satisfy a tax debt, forcing Plaintiffs and the putative class members to make a greater contribution to Defendants than they owed.

141.    It is against equity and good conscience to permit Defendants to retain these excess proceeds.

142.    For the foregoing reasons, Plaintiffs and the putative class members are owed restitution in the amount of the excess proceeds collected by the Defendants.

## COUNT VIII
## Money Had and Received

143.    Plaintiffs reallege all averments as if fully rewritten herein.

144.    Defendants received money belonging to Plaintiffs and each putative class member

145.    Defendants benefitted from receipt of said money.

146.    Under principles of equity and good conscience, Defendants should not be permitted to keep the excess.

147.    Defendants received money belonging to Plaintiffs and the putative class members when they collected the surplus proceeds to which Plaintiffs and the putative class members were entitled. *See Tyler*, 598 U.S. at 642.

148.    By taking the value of Plaintiffs' and each putative class members' excess, Defendants took more than was required to satisfy a tax debt, forcing Plaintiffs and the putative class members to make a greater contribution to Defendants than they owed.

149.    Permitting Defendants to retain the excess proceeds and/or the properties themselves, in excess of the amount owed, would violate the principles of equity and good conscience.

150.    For the foregoing reasons, Defendants owe Plaintiffs and the putative class members restitution in the amount of the excess proceeds they collected and/or retained.

## COUNT VIV
## Inverse Condemnation

151.    Plaintiffs reallege all averments as if fully rewritten herein.

152.    Defendants have intruded onto Plaintiffs' and each putative class member's property rights to such a degree that the conduct, as alleged herein, amounts to a compensable constitutional taking.

153.    Plaintiffs and the putative class members have suffered harm and/or damages in an amount to be proven at trial for the failure of Defendants to provide just compensation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment for themselves and the putative class(es), as follows:

a)  A determination that this action may proceed as a class action pursuant to Federal Rules of Civil Procedure 23(b) with Plaintiffs as class representatives, and the undersigned as Class Counsel;

b)  For judgment for Plaintiffs and the putative class, including but not limited to the amount of the excess (as referenced in this Complaint); interest thereon; costs; and attorney fees;

c)  For a declaration that certain sections of the New York Real Property Tax Law, Oneida County Tax Collection and Enforcement Act and/or Onondaga County Tax Act, as described herein, are unconstitutional on their face and/or as applied;

d)  For a declaration that the practice challenged herein, of taking real property in excess of the amount of the taxes or other obligations for which the property was seized, and retaining such excess, is unconstitutional;

e)  For disgorgement, restitution, and/or equitable relief as Plaintiffs and the putative class are entitled;

f)  For all other or further compensatory and any other damages as Plaintiffs and the putative class are entitled;

g)  For a preliminary and thereafter permanent injunction against Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, who receive notice of the Order, from future use or enforcement the New York Real Property Tax Law, Oneida County Tax Collection and Enforcement Act and/or Onondaga County Tax Act, as described herein, or of any practice that takes, by seizure, foreclosure, process, mesne process or otherwise, private property for payment of taxes or other obligation, in an amount in excess of the amount owed by the owner for which the seizure was conducted, without returning that excess to the owner from whom the property was taken;

h)  For just compensation for inverse condemnation of the private property of Plaintiffs and the putative class;

i) For prejudgment and post-judgment interest, as permitted by law;

j) For a recovery of all costs, reasonable litigation expenses, and reasonable attorneys' fees, as permitted by law, including but not limited to as provided by 42 U.S.C. § 1988 and New York law; and/or

k) For such other and further legal, declaratory, injunctive and equitable relief as the Court may deem just and proper.

### Demand for Jury Trial

Plaintiffs and the putative class members demand trial by jury in the maximum number allowed by law.

DATED: July 20, 2024

*/s/ Robert P. Yawman*
Steven E. Cole, Esq. (Bar No. 2697332)
Robert P. Yawman, Esq. (Bar No. 5195953)
Adams Leclair LLP
28 East Main Street, Suite 1500
Rochester, New York 14614
(585) 327-4200 // (585) 327-4200 Fax
Email: scole@adamsleclair.law
        ryawman@adamsleclair.law


Patrick J. Perotti, Esq. (pro hac vice to be filed)
Nicole T. Fiorelli, Esq. (pro hac vice to be filed)
Frank A. Bartela, Esq. (pro hac vice to be filed)
Patrick J. Brickman, Esq. (pro hac vice to be filed)
Shmuel S. Kleinman, Esq. (pro hac vice to be filed)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 // (440) 352-3469 Fax
Email: pperotti@dworkenlaw.com
        nfiorelli@dworkenlaw.com
        fbartela@dworkenlaw.com
        pbrickman@dworkenlaw.com
        skleinman@dworkenlaw.com

Ronald P. Friedberg, Esq. (pro hac vice to be filed)
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Blvd., Suite 500
Cleveland, OH 44122
(216) 831-0042 // (216) 831-0542 Fax
Email: rfriedberg@meyersroman.com

Gregory P. Hansel, Esq. (pro hac vice to be filed)
PRETI FLAHERTY BELIVEAU &
PACHIOS, CHARTERED, LLP
One City Center
P.O. Box 9546
Portland, ME 04112
(207)791-3000
Email: ghansel@preti.com

David M. Giglio, Esq.
DAVID M. GIGLIO & ASSOCIATES, LLC
13 Hopper Street
Utica, NY 13501
(315) 797-2854
Email: davidgigliolaw@yahoo.com

George F. Carpinello, Esq.
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
(518) 434-0600 // (518) 434-0665
Email: gcarpinello@bsfllp.com

Joseph C. Kohn, Esq. (pro hac vice to be filed)
KOHN SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
Email: jkohn@kohnswift.com

Nathan J. Fink, Esq. (pro hac vice to be filed)
FINK BRESSACK
38500 Woodward Avenue Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500
Email: nfink@finkbressack.com

Jonathan D. Pincus, Esq.
JONATHAN D. PINCUS, ESQ.
10 Whitestone Ln
Rochester, NY 14618-4118
(585) 732-8515
Email: jdp@jdpincus.com

*Attorneys for Plaintiffs*